2015 PA Super 205

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSE MELENDEZ-NEGRON, JR., | : | |
| | : | |
| Appellee | : | No. 494 MDA 2015 |

Appeal from the PCRA Order March 4, 2015,
Court of Common Pleas, Berks County,
Criminal Division at No. CP-06-CR-0002879-2013

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:                    **FILED SEPTEMBER 25, 2015**

The Commonwealth of Pennsylvania appeals from the order of court granting the petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546, by Jose Melendez-Negron, Jr. ("Melendez-Negron").  Following our review, we find no error with the PCRA court's determination that Melendez-Negron was entitled to relief, and so we affirm the PCRA court's order.  We further find, however, that the PCRA court erred in the manner in which it granted relief.  We therefore vacate Melendez-Negron's guilty plea and remand for further proceedings.

In April 2013, police officers in Berks County responded to a noise complaint at Melendez-Negron's residence.  Melendez-Negron allowed the officers to enter his home, at which time the officers observed a firearm on Melendez-Negron, as well as multiple indicia, in plain view, of the

consumption and sale of illegal substances. Following the execution of a search warrant in his home, Melendez-Negron was charged with possession of a controlled substance, possession of a controlled substance with the intent to deliver ("PWID"), possession of a small amount of marijuana, and possession of drug paraphernalia.[1] On July 17, 2013, the Commonwealth gave notice of its intention to invoke the mandatory minimum sentence provision codified at 42 Pa.C.S.A. § 9721.1 based upon Melendez-Negron's possession of a firearm at the time of the offenses in question. On November 15, 2013, Melendez-Negron entered a negotiated plea to PWID, possession of a controlled substance, and possession of a small amount of marijuana. N.T., 11/15/13, at 4. In accordance with § 9721.1, the trial court sentenced Melendez-Negron to five to ten years of incarceration on the PWID conviction, and one year of special probation and a fine of twenty-five dollars on the remaining convictions. *Id.* at 10.

Melendez-Negron did not file a direct appeal. On July 7, 2014, he filed a pro se PCRA petition. On December 23, 2014, appointed counsel filed an amended PCRA petition, arguing that his sentence was unconstitutional, and therefore illegal, in light of the United States Supreme Court's decision in ***U.S. v. Alleyne***, __ U.S. __, 133 S. Ct. 2151 (2013), and this Court's decisions in ***Commonwealth v. Newman***, 99 A.3d 86 (Pa. Super. 2014) (en banc), and ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa. Super.

---

[1] 35 P.S. §§ 780-113(a)(16), (30), (31)(i), (32).

2014). Amended PCRA Petition, 12/23/14, at 2-3. The PCRA court granted

Melendez-Negron's petition, vacated his sentence and ordered that he be

resentenced.[2] This timely appeal followed.[3]

The Commonwealth presents two issues for our review:

1. Did the PCRA court err in vacating [Melendez-Negron's] sentence and ordering a resentencing based upon a claim of trial counsel ineffectiveness for advising Melendez-Negron to plead guilty instead of challenging the constitutionality of the mandatory sentencing provision pursuant to *Alleyne v. United States*, [] 133 S.Ct. [2151] [] (2013)?

2. Did the PCRA court err in vacating [Melendez-Negron's] sentence and ordering a resentencing because as part of a negotiated guilty plea the mere granting of a new sentence strips the Commonwealth of the benefit of the plea bargain, defeated the Commonwealth's rightful expectations in making the agreement, and frustrated the *quid pro quo* of the plea bargain process?

Commonwealth's Brief at 4.

"Our standard of review of [an] order granting or denying relief under

the PCRA requires us to determine whether the decision of the PCRA court is

supported by the evidence of record and is free of legal error. The PCRA

court's findings will not be disturbed unless there is no support for the

---

[2] The PCRA court granted relief without a hearing, although the Commonwealth did file a response to Melendez-Negron's amended PCRA petition.

[3] We note that the resentencing was stayed pending the resolution of this appeal.

findings in the certified record." ***Commonwealth v. Perez***, 103 A.3d 344, 347 (Pa. Super. 2014) (citation omitted).

The Commonwealth first argues that the PCRA court erred in finding that Melendez-Negron's trial counsel ("Counsel") was ineffective for allowing Melendez to plead guilty to a sentence based on the mandatory minimum sentencing enhancement, § 9721.1. It is well established that to prove ineffective assistance of counsel, a PCRA petitioner must prove that the underlying legal claim has arguable merit; counsel had no reasonable basis for his or her action or omission; and that the petitioner suffered prejudice as a result. ***Commonwealth v. Watkins***, 108 A.3d 692, 702 (Pa. 2014).

In rejecting the Commonwealth's claim, the PCRA court first notes this Court found § 9721.1 unconstitutional in light of ***Alleyne***, drolly cites the Gregorian calendar,[4] and then concludes that because Melendez-Negron's sentencing occurred five months after the decision in ***Alleyne*** was announced, Counsel was ineffective for allowing Melendez-Negron to agree to a sentence that was premised on the application of § 9721.1. PCRA Court Opinion, 4/16/15, at 3-4 (discussing ***Commonwealth v. Newman***, 99 A.3d 86 (Pa. Super. 2014) (en banc), and ***Commonwealth v. Cardwell***, 105 A.3d 738 (Pa. Super. 2014)).

---

[4] The court recited the respective dates of the decision in ***Alleyne*** and Melendez-Negron's plea and then stated, "[T]his court takes judicial notice of the Gregorian calendar and finds as a fact that November 15, 2013 followed June 17, 2013." PCRA Court Opinion, 4/16/15, at 4.

The Commonwealth argues that although **Alleyne** was decided prior to Melendez-Negron's plea and sentencing, no Pennsylvania appellate court had addressed the constitutionality of § 9721.1 at the time, and therefore Counsel "cannot be deemed ineffective for failing to predict the changes or developments in the law." Commonwealth's Brief at 14 (citing **Commonwealth v. Gribble**, 863 A.2d 455 (Pa. 2004)). We cannot agree. First, the Commonwealth is incorrect in that this Court issued an opinion addressing **Alleyne** and the constitutionality of § 9721.1 on October 10, 2013. **See Commonwealth v. Munday**, 78 A.3d 661 (Pa. Super. 2013).[5] This was more than one month prior to Melendez-Negron's plea and sentencing proceeding.

Second, in **Alleyne**, the United States Supreme Court found mandatory minimum sentence enhancements unconstitutional where the facts that increase a mandatory minimum sentence are not submitted to a jury and are not required to be found beyond a reasonable doubt. Upon the issuance of the **Alleyne** decision in June 2013, Counsel was on notice that the constitutionality of such sentencing enhancements was in question. There can be no reasonable basis for Counsel's failure to recognize this and to advise Melendez-Negron to reject a plea agreement that incorporated a

---

[5] We note that in **Munday**, this Court found § 9721.1 unconstitutional as applied to the appellant and we declined to consider whether § 9721.1 was facially unconstitutional because the issue was not raised. **Munday**, 78 A.3d at 666.

sentence based upon § 9721.1. This is so especially in light of the fact that the application of § 9721.1 resulted in a sentence that was more than double the aggravated range sentence Melendez-Negron would have faced. **See** N.T., 11/15/14, at 8-9.[6] In a situation such as this, where the United States Supreme Court has spoken, counsel need not wait for a pronouncement from a Pennsylvania appellate court. By raising such a claim or at least questioning the constitutionality § 9721.1 during plea negotiations, Counsel would not be predicting changes in the law, as the Commonwealth contends, but rather conscientiously advancing an argument based upon the logical extension of **Alleyne** to protect his client's interests.

Further, we are not swayed by the Commonwealth's argument that because Melendez-Negron admitted the element that would trigger the application of § 9721.1 (possession of a firearm), there is no **Alleyne** violation. Commonwealth's Brief at 12. As this Court has previously concluded,

> we see no meaningful difference, for the purposes of **Newman** and **Valentine**, between submitting the element to the jury and accepting a stipulation from a defendant. They both have the purpose of finding a method to impose a mandatory minimum sentence

---

[6] This large disparity between the sentence Melendez-Negron could have received and the sentence he agreed to establishes prejudice for purposes of the ineffective assistance of counsel standard. **See Commonwealth v. Meadows**, 787 A.2d 312, 319 (Pa 2001) (holding that to establish prejudice, an appellant must demonstrate "that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different.").

> outside the statutory framework, but consistent with *Alleyne*. However, both *Newman* and *Valentine* unequivocally state that creating a new procedure in an effort to impose a mandatory minimum sentence is solely within the province of the legislature. [] While submission to a jury is a more formal and involved procedure, we decline to fracture *Newman* and *Valentine* further by concluding that when read together, they only prohibit formal mandatory minimum procedures, but permit informal ones.

*Commonwealth v. Cardwell*, 105 A.3d 748, 754-55 (Pa. Super. 2014). Melendez-Negron's admission that he possessed a firearm, which he made for purposes of his plea, is the functional equivalent of a stipulation, and pursuant to *Cardwell*, it does not remedy the *Alleyne* violation inherent to § 9721.1. Accordingly, the Commonwealth's argument cannot succeed.

In its second issue, the Commonwealth argues that the case should not be remanded for resentencing, but that Melendez-Negron "should be returned to the *status quo* prior to the entry of the guilty plea." Commonwealth's Brief at 22.[7] The Commonwealth argues that in consideration of agreeing to a five-to-ten-year period of incarceration, it "gave up the opportunity to seek sentences" on the drug paraphernalia and small amount of marijuana charges. *Id.* By simply allowing resentencing pursuant to the sentencing guidelines, the Commonwealth contends, it is losing the benefit of its bargain. The PCRA court did not agree, as it reasoned that "the Commonwealth is not entitled to the benefit of a plea

---

[7] Melendez-Negron did not seek to withdraw his plea, he only asked to be resentenced pursuant to the Sentencing Guidelines.

bargain entered into with a defendant who was misinformed by his attorney and who believed at the time he entered his plea that an illegal mandatory minimum sentencing provision was applicable." PCRA Court Opinion, 4/16/15, at 4. For the following reasons, we agree with the Commonwealth.

We recognize "the importance of the plea bargaining process as a significant part of the criminal justice system" and that "a defendant is permitted to waive valuable rights in exchange for important concessions by the Commonwealth when the defendant is facing a slim possibility of acquittal." *Commonwealth v. Widmer*, ___ A.3d ___, 2015 WL 4394268 (Pa. Super. July 20, 2015). The record here reveals that in negotiating the terms of the plea agreement, both parties operated under the belief that § 9721.1 was in effect and that Melendez-Negron was subject to its terms. N.T., 11/15/13, at 7-11. It is further evident that the sentencing court believed that it applied, as well. *Id.* at 7. This Court addressed an analogous situation in *Commonwealth v. Hodges*, 789 A.2d 764 (Pa. Super. 2002). In *Hodges*, the defendant entered a negotiated open guilty plea to multiple crimes, including two counts of first-degree murder, in exchange for the Commonwealth's agreement not to seek the death penalty on the murder charges. In accordance with that agreement, the trial court sentenced the defendant to two consecutive life sentences on the murder convictions, with concurrent sentences for two lesser convictions. He subsequently moved to withdraw his plea.

> The thrust of [the defendant's] argument revolved around a mistake pertaining to [the defendant's] age. Although trial counsel and the Commonwealth believed that [the defendant] was born on May 7, 1980, [the defendant] was actually born on May 7, 1982, making him fifteen years old at the time of the crime. Because he was not yet sixteen years of age at the time of the crime, he could not be subjected to the death penalty. *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). [The defendant] correctly asserted that because of his age, the death penalty was never applicable. Therefore, because he entered into his plea agreement in order to avoid the death penalty, [the defendant] requested leave to withdraw that plea.

*Commonwealth v. Hodges*, 789 A.2d at 765 (Pa. Super. 2002). The trial court denied the defendant's motion.

On review, this Court found that the shared misunderstanding as to the possible extent of the defendant's sentence fatally poisoned the negotiations process:

> [T]he plea was based on a maximum sentence that the court had no authority to impose. The entire process of plea negotiations, therefore, was affected by this grave error. [The defendant] pled guilty in order to avoid a maximum sentence which, by law, could not be imposed. We hold that in the event the maximum sentence communicated to a criminal defendant is in fact an illegal sentence, the plea process has been tainted from the outset and manifest injustice is established.

> The trial court stated that [the defendant] received the benefit of his bargain; it is clear, however, that [the defendant] did not strike a legitimate bargain. While it is true that [he] was aware that he could be sentenced to life, and that

- 9 -

> sentence was subsequently imposed, it cannot be said that [the defendant] entered into this agreement knowingly or voluntarily.

*Id.* at 767.

Another panel of this Court relied on this reasoning in a subsequent case. In ***Commonwealth v. Lenhoff***, 796 A.2d 338 (Pa. Super. 2002), the defendant was charged with forgery graded as a second-degree felony and unsworn falsifications to authorities graded as a second-degree misdemeanor. The defendant pled guilty to one count of each in exchange for a sentence of nine to twenty-three months of incarceration. At the plea hearing, the trial court emphasized to the defendant that "forgery is a felony of the second degree punishable by a maximum of [ten] years [of] incarceration[,]" and the defendant acknowledged his understanding of this. *Id.* at 340. In a post-sentence motion, the defendant argued that the forgery charge should have been graded as a first-degree misdemeanor and asked to withdraw his plea. The trial court agreed that the forgery was incorrectly graded and adjusted it to a third-degree felony, but did not allow the defendant to withdraw his plea. On appeal, the defendant challenged both the grading of his forgery charge and the denial of his request to withdraw his plea. After affirming the trial court's decision to grade the forgery as a third-degree felony, we considered the circumstances surrounding the entry of the plea. Based upon the rationale espoused in ***Hodges***, we reasoned as follows:

> [The defendant] was charged with and entered plea negotiations to avoid a sentence for a second degree felony, not a third degree felony. Indeed, [the defendant] observes that because the forgery count was graded incorrectly, there are different guideline scores applicable. This change, [he] continues, may have "resulted in different plea offers and negotiations and considerations of partial confinement requested by the defendant." [Defendant's] [B]rief at 15. [The defendant] was charged with a second degree felony, carrying a ten-year maximum. The maximum legal sentence that [the defendant] faced when he entered plea negotiations and the plea itself was, in fact, less than ten years. He indicated on the record that he had conducted research, knew that he faced a ten-year sentence, and was seeking to avoid that sentence by pleading guilty. Meanwhile, the court did not have the legal authority to impose that sentence. The plea was fatally flawed from the start, as in *Hodges*, by the defendant's desire to avoid a sentence that the court did not have the power to impose. Hence, we agree with [the defendant's] position that plea negotiations were tainted at the outset by misinformation about sentences. Therefore, it is clear that [he] should be permitted to withdraw his guilty plea.

*Id.* at 342-43.

This case is fundamentally akin to *Hodges* and *Lenhoff*; where it differs is that it is the Commonwealth, not the defendant, who argues that it is being deprived of the benefit of its bargain. We see no reason why the rationale of *Hodges* and *Lenhoff* should be limited to criminal defendants. Indeed, both parties to a negotiated plea agreement are entitled to receive the benefit of their bargain. *See Commonwealth v. Townsend*, 693 A.2d 980, 983 (Pa. Super. 1997) ("[W]here the parties have reached a specific

sentencing agreement … the court cannot later modify the terms of the agreement without the consent of the Commonwealth" because "this would deny the Commonwealth the full benefit of the agreement which it reached … and the defendant, in turn, would receive a windfall."); ***Commonwealth v. Coles***, 530 A.2d 453, 458 (Pa. Super. 1987) (holding that granting defendant's motion to modify negotiated plea sentence stripped Commonwealth of the benefit of its bargain); ***see also Commonwealth v. Ortiz***, 854 A.2d 1280, 1284 (Pa. Super. 2004) (en banc) (holding that where amount of restitution is agreed upon as part of negotiated plea, Commonwealth cannot later seek to increase it). Accordingly, we conclude that the shared misapprehension that the mandatory minimum sentence required by § 9721.1 applied to Melendez-Negron tainted the parties' negotiations at the outset. As in ***Hodges*** and ***Lenhoff***, the parties' negotiations began from an erroneous premise and therefore were fundamentally skewed from the beginning. Thus, while we affirm the PCRA court's order vacating Melendez-Negron's sentence, we further vacate his guilty plea and remand for further proceedings. ***See Lenhoff***, 796 A.2d at 343.

Order affirmed. Guilty plea vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/2015